UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMBER and NUHA JADAMA,

                                        Plaintiffs,

     -v-                                          6:10-CV-1586

KEYCORP,

                                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

DELORENZO LAW FIRM                        CORY R. DALMATA, ESQ.
Attorneys for Plaintiffs
The Lupe Building
670 Franklin Street, 2d Floor
Schenectady, NY  12305

MORAN, KARAMOUZIS LAW FIRM                ANDREW P. KARAMOUZIS, ESQ.
Attorneys for Defendant
265 Sunrise Highway, Suite 61
Rockville Centre, NY  11570

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

        Plaintiffs Amber Jadama ("Amber") and her husband Nuha Jadama ("Nuha")

(collectively "plaintiffs") bring this action alleging:  (1) race discrimination in violation of the

Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1981;

(2) conspiracy in violation of 42 U.S.C. §§ 1985 and 1986; and (3) pendent state law claims

for discrimination, negligence, and intentional infliction of emotional distress.  Dkt. No. 1.

Defendants have moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 5.  Although plaintiffs oppose the motion, they did not file a memorandum of law opposing defendant's legal arguments for dismissal.  Instead, plaintiffs have cross-moved for leave to amend the complaint pursuant to Rule 15(a).[1]  Dkt. No. 7.  Defendant filed a reply in further support of its motion to dismiss and in opposition to the cross-motion.  Dkt. No. 13. The motions were considered on submit.

## II.  FACTUAL BACKGROUND

The following facts are taken from the original complaint.  Plaintiffs are "foreigners from India and Gambia."  On September 6, 2010, they opened a joint checking account at defendant's bank branch located in Johnstown, New York.  The following day Amber received a phone call from defendant's representative, Steven Christian ("Christian"), who advised that the bank was closing their account because Amber "was married to a terrorist" and to continue the business relationship would be "aiding terrorism."  On September 16, 2010, plaintiffs received a $50.00 check by mail from defendant, representing the return of their checking account deposit.

## III.  DISCUSSION

As plaintiffs seek leave to amend the complaint, their motion will be addressed first.

### A.  Plaintiffs' Cross-Motion to Amend

Plaintiffs seek to amend their complaint to:  (1) clarify their race, nationality, citizenship, and other factual allegations in the existing causes of action; (2) add a cause of

---

[1]  Plaintiffs sought consent from defendant to file an amended complaint, but this request was rejected.

action under 42 U.S.C. § 1982; (3) withdraw the cause of action under New York Civil Rights Law § 40; and (4) add KeyBank National Association ("KeyBank"), KeyCorp's subsidiary, as a defendant.  Defendant argues that the motion to amend should be denied as futile because all causes of action in the proposed amended complaint fail to state a plausible claim.

Leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).  An amendment to a complaint is futile if the proposed claim would not withstand a motion to dismiss.  Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

To survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  Although a complaint need only contain "a short and plain statement of the claim showing the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), more than mere conclusions are required.  Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009).

Dismissal is appropriate only where plaintiffs fail to provide some basis for the allegations that support the elements of their claims.  See Twombly, 550 U.S. at 570, 127 S. Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its face").  When considering a motion to dismiss, the complaint is to be construed liberally, and

all reasonable inferences must be drawn in the plaintiffs' favor.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

### 1. Claims Against KeyCorp

Defendant argues that KeyCorp is not a proper defendant in this action.  In their proposed amended complaint, plaintiffs seek to add KeyBank as a defendant.  Defendant explains that KeyCorp is a holding company for KeyBank, a national banking association. Defendant maintains that KeyCorp must be dismissed because, as a parent company, it cannot be held liable for the acts of its subsidiary.

Generally, "a corporate relationship alone is not sufficient to bind a parent corporation for the actions of its subsidiary."  DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996) (internal quotation marks and alterations omitted).  In order to hold a parent company liable for the acts of its subsidiary, "plaintiffs must come forward with the showing of actual domination required to pierce the corporate veil."  Id. at 70 (internal quotation marks omitted).

Plaintiffs fail to put forth any factual allegations to plausibly suggest KeyCorp exercised "actual domination" over KeyBank.  There is no indication that KeyCorp employees shaped or implemented KeyBank's policies.  All communications with plaintiffs involved representatives of the KeyBank branch in Johnstown, New York.  The only factual allegations specific to KeyCorp is that it is headquartered in Ohio and is the parent company of KeyBank.  However, plaintiffs allege that "KeyBank, as a principal subsidiary of defendant, KeyCorp, is responsible for the organization and management of branch locations" including the branch located in Johnstown.  Dalmata Affirm., Ex. D, Dkt. No. 7-3, ¶ 14 ("Proposed Amended Complaint").  Such allegations fall far short of establishing KeyCorp's "actual

domination" over KeyBank.  See McAnaney v. Astoria Fin. Corp., 665 F. Supp. 2d 132, 145 (E.D.N.Y. 2009) (parent company's controlling ownership interest in subsidiary, issuance of consolidated earning statements, and overlapping officers in both entities, without more, is insufficient "to eviscerate the presumption of corporate separateness").

Accordingly, it would be futile to permit plaintiffs to include claims against KeyCorp in an amended complaint.

## 2.  First, Second, and Fifth Causes of Action

Defendant acknowledges that the proposed amended complaint remedies plaintiffs' initial failure to identify their race and national origin by alleging Amber is "of the Asian Indian Race and Indian descent" and Nuha is "of the African American Race and West African descent."[2]  Proposed Amended Complaint, ¶¶ 10–11.  Defendant argues, however, that plaintiffs' discrimination claims—those pursuant to 42 U.S.C. §§ 1981, 1982, and Article 1, Section 11 of the New York State Constitution[3]—are wholly conclusory and insufficient to establish an intent to discriminate based on race.

To state a claim under §§ 1981 and 1982, plaintiffs must show:  (1) they are members of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) the discrimination involved one or more of the activities enumerated in the statutes—i.e. make and enforce contracts (§ 1981), hold and convey property (§ 1982).  McKnight v. Middleton,

---

[2]  The proposed amended complaint also notes that plaintiffs are both American citizens.

[3]  "Because New York courts require the same standard of proof for discrimination claims brought pursuant to state law as that required for federal discrimination claims [under § 1981]," the claim asserted pursuant to Article 1, Section 11 of the New York Constitution will be considered together with the federal discrimination claims.  See Harris v. Allstate Ins. Co., 83 F. Supp. 2d 423, 431 n.3 (S.D.N.Y. 2000).

699 F. Supp. 2d 507, 529 (E.D.N.Y. 2010).  In order to survive a motion to dismiss, "a plaintiff must allege with specificity facts sufficient to show or raise a plausible inference that the defendant purposefully discriminated against him because of the plaintiff's race."  Garg v. Albany Indus. Dev. Agency, 899 F. Supp. 961, 967 (N.D.N.Y. 1995) (McAvoy, C.J.), aff'd, 104 F.3d 351 (2d Cir. 1996).

In the proposed amended complaint plaintiffs allege that Amber spoke with defendant's employee, Christian, twice after they opened a joint bank account.  During the first conversation, Christian advised Amber that the account would be closed because "she was married to a terrorist and, therefore, would be aiding terrorism."  Proposed Amended Complaint, ¶ 16.  During the second conversation, which took place the next day, Christian told Amber that "they were unable to do business with the Jadama's [sic] as they may be aiding and abetting terrorism or they may be conducting fraudulent activities, such as Nigerian scams."  Id. at ¶ 17.  Plaintiffs further allege that non-white customers are subject to greater scrutiny than white customers and "must overcome a suspicion that they are attempting to aid in terrorist activity or conducting fraudulent activity."  Id. at ¶ 22.

Accepting these allegations as true and making all reasonable inferences in plaintiffs' favor, they sufficiently state claims under §§ 1981, 1982, and Article 1, Section 11 of the New York Constitution.  By declaring Nuha a "terrorist," deeming Amber unqualified to hold an account because she was married to Nuha, and suggesting plaintiffs may engage in fraudulent "Nigerian scams," defendant evidenced an intent to discriminate based on plaintiffs' race and/or national origin.  Plaintiffs also allege that similarly situated white customers are not subject to the same level of suspicion and do not have to overcome a

presumption that they are aiding terrorism.  Plaintiffs have thus put forth factual allegations plausibly suggesting that the decision to close their bank account was motivated by an intent to discriminate against them because of their race and/or national origin.

Accordingly, it would not be futile to allow plaintiffs to include the First, Second, and Fifth Causes of Action—those brought under 42 U.S.C. §§ 1981, 1982, and Article 1, Section 11 of the New York Constitution—in an amended complaint.

### 3.  Third and Fourth Causes of Action

Defendant argues that plaintiffs' conspiracy claims—those brought under 42 U.S.C. §§ 1985 and 1986—fail to establish a "meeting of the minds" and are barred by the intra-corporate conspiracy doctrine.

"In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted).  In the proposed amended complaint plaintiffs allege that KeyCorp and KeyBank "entered into conspiracies with each other." Proposed Amended Complaint, ¶ 38.  This vague and conclusory allegation is an insufficient basis on which to find that a meeting of the minds took place and an agreement to violate plaintiffs' rights was entered into.

Moreover, the intra-corporate conspiracy doctrine dictates that "agents and employees of a single corporate entity are legally incapable of conspiring together." Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008).  Similarly, "a corporation generally cannot conspire with its employees or agents as all are considered a single entity." Everson v. N.Y.C. Transit

Auth., 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) (internal quotation marks omitted).  All

communications with plaintiffs involved KeyBank representatives.  There are no allegations

from which to infer that anyone outside the single corporate entity of KeyBank—the only

proper defendant in this action—was involved in any conspiracy to deprive plaintiffs of their

rights.  Plaintiffs' § 1985 conspiracy claim is therefore barred by the intra-corporate

conspiracy doctrine.

Further, "because a § 1986 claim must be predicated on a valid § 1985 claim,"

allowing plaintiffs to include a § 1986 claim in the amended complaint would be futile.  Brown

v. City of Oneonta, 221 F.3d 329, 341 (2d Cir. 2000) (internal quotation marks and citation

omitted).

Accordingly, it would be futile to allow plaintiffs to include the Third and Fourth Causes

of Action—those brought under 42 U.S.C. §§ 1985 and 1986—in an amended complaint.

### 4. Sixth Cause of Action

Defendant argues it would be futile to permit plaintiffs to include a claim under New

York Executive Law § 296 because the KeyBank branch is not a "place of public

accommodation."

Section 296(2)(a) of the New York Executive Law prohibits "any place of public

accommodation" from discriminating based on race, creed, color, or national origin.  Section

292(9) defines "place of public accommodation" to include "wholesale and retail stores and

establishments dealing with goods or services of any kind."  Section 292(9) specifically

excludes "any institution, club or place of accommodation which proves that it is in its nature

distinctly private."  A defendant seeking the benefit of this exemption has the burden of

establishing that its place of accommodation is "distinctly private."  Cahill v. Rosa, 89 N.Y.2d 14, 22 (N.Y. 1996).  The New York legislature "used the phrase place of public accommodation in the broad sense of providing conveniences and services to the public," and it "should be interpreted liberally."  Id. at 21.

Defendant fails to establish that its bank branch is distinctly private.  Even though banks are not specifically included in Section 292(9)'s definition of "place of public accommodation," banking is clearly a service provided to the public.  Indeed, the New York Court of Appeals found a dentist's office to be a place of public accommodation because, inter alia, it provided services to the public and was "generally open to all comers."  Id. Courts in New York have deemed similar spaces "places of public accommodation."  See, e.g., D'Amico v. Commodities Exch. Inc., 235 A.D.2d 313, 314 (N.Y. App. Div. 1st Dep't 1997) (the trading floor of a stock exchange is a place of public accommodation because qualified applicants are routinely accepted and no subjective limits are placed on the number of people eligible for membership).  Similarly, a bank branch location provides services to the public, is open to anyone who walks through its doors during business hours, and does not impose subjective limits on membership.  Therefore, defendant's bank constitutes a "place of public accommodation" for purposes of plaintiffs' Section 296(2)(a) claim.

Accordingly, it would not be futile to permit plaintiffs to include the Sixth Cause of Action—brought under New York Executive Law § 296—in an amended complaint.

### 5. <u>Seventh Cause of Action</u>

Defendant argues it would be futile to permit plaintiffs to include a negligence claim in their amended complaint because there are no allegations that KeyBank knew or should

have known of its employees' alleged racial bias.  Plaintiffs allege that defendant failed to closely monitor its employees or train them about discriminatory practices and, therefore, breached its duty to protect customers from unlawful discrimination.

"To prevail on a negligent hiring, retention, or supervision claim under New York law, the plaintiff must show that the defendant/employer knew or should have known of its employee's propensity to engage in the injurious conduct in question."  Tesoriero v. Syosset Cent. Sch. Dist., 382 F. Supp. 2d 387, 401 (E.D.N.Y. 2005).  Although the proposed amended complaint does not outline specific instances of prior race discrimination by defendant's employees, it suggests there is a history of discriminating against non-white customers by forcing them to overcome a presumption that they engage in terrorism and/or fraud.  While discovery may indeed show this incident was an isolated matter, it would be premature at this early stage of the litigation to conclude as a matter of law that defendant could not possibly have known its employees would engage in racial discrimination.  It is therefore inappropriate to determine at this juncture whether defendant breached its duty to plaintiffs.

Accordingly, it would not be futile to allow plaintiffs to include the Seventh Cause of Action for negligence in an amended complaint.

### 6. Eighth Cause of Action

Defendant argues that it would be futile to allow plaintiffs to include an intentional infliction of emotional distress ("IIED") claim in their amended complaint because their alleged conduct was not extreme and outrageous.

To state an IIED claim under New York law "a plaintiff must allege that the defendant, (1) by extreme and outrageous conduct, (2) intentionally or recklessly (3) caused plaintiff (4) severe emotional distress." Burns v. Cook, 458 F. Supp. 2d 29, 47 (N.D.N.Y. 2006).  The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id. (internal quotation marks omitted).  The Second Circuit has noted that New York state courts have sustained IIED claims where there is "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, . . . or conduct contrary to public policy."  Stuto v. Fleishman, 164 F.3d 820, 828 (2d Cir. 1999).

Plaintiffs allege that defendant and its employees "intentionally and deliberately inflicted emotional distress by defaming them to many people including but not limited to, witnesses to this incident."[4]  Proposed Amended Complaint, ¶ 70.  During two separate phone conversations with Amber, defendant's employee, Christian, insisted Nuha was a "terrorist," declared that Amber could not maintain an account because "she was married to a terrorist," and advised that their account would be closed because the bank did not want to aid terrorism or fraudulent "Nigerian scams."  Again, making all reasonable inferences in plaintiffs' favor at this early stage of the litigation, such allegations state a plausible IIED claim.  The factual allegations amount to a combination of public humiliation, false accusations of criminal conduct, verbal harassment, and conduct contrary to public policy.

_____

[4]  Plaintiffs fail to identify the "witnesses" present during their communications with defendant—most of which took place over the phone or in writing through the mail.

Accordingly, it would not be futile to allow plaintiffs to include the Eighth Cause of Action for IIED in an amended complaint.

## IV. CONCLUSION

At this early stage of the litigation, and in the interest of justice, plaintiffs will be permitted to amend their complaint.  However, it would be futile for plaintiffs to include any claims against KeyCorp in the amended complaint as KeyCorp cannot be held liable for the actions of KeyBank simply because it is the parent company.  It would also be futile to include the Third and Fourth Causes of Action alleging conspiracy.  However, the First, Second, Fifth, Sixth, Seventh, and Eighth Causes of Action alleged in the proposed amended complaint state plausible claims and survive defendant's motion to dismiss.

Therefore, it is

ORDERED that

1.  Defendant's motion to dismiss is GRANTED in part and DENIED in part;

2.  Plaintiffs' motion to amend the complaint is GRANTED;

3.  The Clerk of the Court shall file the proposed amended complaint (Dkt. No. 7-3);

4.  Defendant KeyCorp is STRICKEN from the amended complaint;

5.  The only defendant in the amended complaint is KeyBank National Association;

6.  The Third and Fourth Causes of Action in the amended complaint are DISMISSED; and

7.  KeyBank shall file an answer to the First, Second, Fifth, Sixth, Seventh, and Eighth Causes of Action in the amended complaint on or before July 1, 2011.

IT IS SO ORDERED.

United States District Judge

Dated:  June 14, 2011
        Utica, New York.